UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
CALIEB BARNES,                          :
                          Petitioner,   :
                                        :        16cv4521(DLC)
                  -v-                   :        11cr184 (DLC)
                                        :
UNITED STATES OF AMERICA,               :        OPINION AND
                                        :            ORDER
                          Respondent.   :
                                        :
--------------------------------------- X

APPEARANCES:

For the petitioner:
Barry D. Leiwant
Darrell Fields
Federal Defenders of New York, Inc.
52 Duane Street – 10th Fl
New York, NY 10007

For the respondent:
Damian Williams
Benjamin M. Burkett
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

        In his successive petition, Calieb Barnes seeks to vacate

his sentence on one of the counts on which he was convicted.

Barnes contends that his conviction on count 5, which charged

him with use of a firearm in connection with a crime of

violence, specifically attempted Hobbs Act robbery, relied on

the definition of a crime of violence contained in 18 U.S.C. §

924(c)(3)(B), the clause known as the residual clause.  For the
following reasons, his successive petition is denied.

## Background

On February 27, 2012, Barnes and a co-defendant were
indicted in a ten-count superseding indictment in connection
with their crack cocaine business.  The charges included counts
related to a June 2006 attempted robbery in which Barnes pistol-
whipped the victim, and his May 15, 2010 murder of a rival drug
dealer.  This petition concerns the defendant's conviction on
count 5, which charged him with brandishing a firearm in
furtherance of the 2006 attempted robbery.  The attempted
robbery was charged in count 4 and the related firearm offense
was charged in count 5.

The ten counts in the indictment were as follows:

(1)   conspiracy to distribute narcotics, 21 U.S.C. §§
      841(b)(1)(A) and 846;

(2)   use of a firearm during and in relation to that
      narcotics conspiracy, 18 U.S.C. § 924(c)(1)(A)(i);

(3)   conspiracy to commit Hobbs Act robbery, 18 U.S.C. §
      1951 (in connection with the 2006 attempted robbery);

(4)   attempted Hobbs Act robbery, 18 U.S.C. § 1951 (the
      2006 attempted robbery);

(5)   brandishing a firearm in furtherance of a crime of
      violence, specifically the 2006 attempted robbery, 18
      U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i);

2

(6) murder while engaged in a narcotics conspiracy, 21 U.S.C. § 848(c)(1)(A)(in connection with the 2010 murder);

(7) using a firearm in furtherance of a crime of violence, specifically the 2010 murder, 18 U.S.C. §§(c)(1)(A)(ii) and 924(c)(1)(C)(i);

(8) murder through use of a firearm during a drug trafficking crime, in connection with the 2010 murder, 18 U.S.C. § 924(j);

(9) conspiracy to distribute a controlled substance, 21 U.S.C. §§ 841(b)(1)(D) and 846; and

(10) firearms trafficking conspiracy, 18 U.S.C. §§ 371 and 922(a)(1)(A).

The defendant proceeded to trial. As relevant to counts 4 and 5 and relying on testimony from eyewitnesses and hospital records, the Government proved that in June of 2006, Barnes and two associates attempted to rob a local drug dealer of a kilogram of cocaine. Barnes and one of his associates beat the victim. Using a firearm, Barnes beat the victim on the head and in his face. The robbers did not succeed in obtaining any drugs or drug proceeds. The victim was treated at a hospital for lacerations to his head. On April 3, 2012, the jury found the defendant guilty on counts 4 and 5 as well as the remainder of the ten counts.

On August 9, 2012, the defendant was sentenced principally to 100 years' imprisonment. The Court imposed concurrent sentences of 45 years on counts 1, 6, and 8; to be followed by

3

three consecutive terms of imprisonment of five, 25 and 25 years on counts 2, 5, and 7, respectively.  Counts 2, 5, and 7 charged Barnes with the use of firearms and the sentences on those counts were mandated by statute.  The defendant was sentenced to concurrent sentences of 20 years' imprisonment on counts 3 and 4, and concurrent sentences of five years' imprisonment on counts 9 and 10.  Thus, twenty-five years of Barnes's 100-year sentence was imposed pursuant to the count 5 conviction.

The Court of Appeals affirmed the conviction on March 21, 2014.  In his appeal, the defendant did not argue that the attempted Hobbs Act robbery charged in count 5 did not qualify as a crime of violence.

On June 5, 2015, the defendant filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  Similarly, in that petition, the defendant did not argue that the attempted Hobbs Act robbery was not a crime of violence.  On February 8, 2016, the petition was denied.  The Court did not certify an appeal and the defendant did not file an appeal.

On June 15, 2016, the defendant filed another § 2255 petition, arguing that his § 924(c) conviction on count 5 should be vacated in light of Johnson v. United States, 576 U.S. 591 (2015).  Johnson held that the residual clause of the Armed Career Criminal Act (§ 924(e)(2)(B)(ii)) ("ACCA") was void for

4

vagueness, such that imposing an increased sentence under that clause violates due process.  Id. at 606.  On July 13, 2016, the petition was transferred to the Court of Appeals as a successive petition.

In 2019, while Barnes's application to file a successive § 2255 petition was pending in the Second Circuit, the Supreme Court held that the residual clause of § 924(c)(3)(B) is unconstitutionally vague.  United States v. Davis, 139 S. Ct. 2319, 2336 (2019).  On August 6, 2020, Barnes supplemented his petition, noting that several circuits had by then held that a Davis claim satisfies the gatekeeping requirements for second or successive § 2255 petitions because such a claim is, prima facie, based on a new rule of constitutional law made retroactive on collateral review by the Supreme Court.

On October 1, 2020, the Court of Appeals granted Barnes's motion for leave to file the petition.  It held that Barnes had made a prima facie showing that his successive petition satisfies the requirements of § 2255(h).  The mandate returning jurisdiction also noted that "the issue of whether attempted Hobbs Act robbery is a crime of violence under the § 924(c)(3)(A) force clause has been raised in several" pending appeals and that this Court could decide whether to stay consideration of the petition pending decisions on those

5

appeals.  The mandate further noted that the Court of Appeals had "not examined any other arguments or claims raised by Petitioner, including his challenge to another § 924(c) conviction," but that this Court would "have the preliminary task of determining whether the claims of Petitioner's § 2255 motion -- as to which we have only concluded that a prima facie showing has been made as to one of those claims -- satisfy the threshold requirements governing successive § 2255 motions."

Upon remand, this petition was stayed.  While the petition was stayed, the Supreme Court ruled that attempted Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A)'s force clause, because an attempt does not categorically require the Government to prove that the defendant used, attempted to use, or threatened to use force against the person or property of another.  United States v. Taylor, 596 U.S. 845, 851 (2022). Rather, the Government need only prove that the defendant intended to take property by force or threat and then took a substantial step to achieve that end.  Id.

Represented by counsel, Barnes filed a memorandum in support of his petition on September 15, 2022.  He sought to vacate the 25-year term of imprisonment imposed on count 5 because an attempt to commit Hobbs Act robbery did not qualify

as a crime of violence pursuant to Taylor.  Barnes sought a de novo sentencing.

On January 23, 2023, the Court of Appeals issued its ruling in United States v. McCoy, 58 F.4th 72 (2d Cir. 2023).  McCoy vacated a defendant's § 924(c) convictions for brandishing firearms during attempted Hobbs Act robberies in light of the Taylor decision.  Id. at 73.

On June 12, 2023, petitioner's counsel, relying on Taylor and McCoy, requested that the stay be lifted.  On June 14, this Court lifted the stay.  Petitioner's counsel filed a second memorandum in support of Barnes' petition on September 15, relying on the Taylor and Davis.

The Government opposed the petition on October 27.  Defense counsel replied on November 27, reiterating that the conviction on count 5 "must be vacated because it isn't predicated on a proper 'crime of violence,'" and citing Johnson, Davis, and Taylor.[1]

_____

[1] In the reply, Barnes represents that he has not abandoned his claim in his June 15, 2016 petition that his conviction on count 7 should be vacated.  His counsel explains that he seeks to preserve the claim for a potential certiorari petition to the Supreme Court although he recognizes that the law in the Second Circuit does not currently support his claim.

In a letter of March 13, 2024, Barnes seeks to preserve his right to argue that he does not need to show that his claim in a successive petition "relies on" a new rule of constitutional law.  Barnes recognizes that the law in the Second Circuit is to the contrary.

## Discussion

The Government opposes this petition on the ground that the petition has failed to meet the requirements that apply to successive habeas petitions.  It agrees that, pursuant to Taylor, attempted Hobbs Act robbery no longer qualifies as a crime of violence under § 924(c).  See 596 U.S. at 853; McCoy, 58 F.4th at 73.  As it points out, however, to succeed on a successive petition, Barnes must show that he is relying on a new rule of constitutional law, which Taylor is not.

As relevant here, 28 U.S.C. § 2255(h)(2) requires successive habeas petitions to be certified "as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  (Emphasis supplied.)  Where, as here, the Court of Appeals grants preliminary authorization of the successive petition, a district court must "independently

consider if the motion in fact relies on a 'new rule of constitutional law.'" Savoca v. United States, 21 F.4th 225, 230 (2d Cir. 2021), vacated in part, 2022 WL 17256392 (2d Cir. Nov. 29, 2022). For this statement of petitioner's burden, Savoca cites 28 U.S.C. § 2244(b), which requires a successive petition to be dismissed unless "the applicant shows that the claim relies on a new rule of constitutional law." Id. at 2244(b)(2)(A). (Emphasis supplied.) The district court must engage in "a searching inquiry, pursuant to which [the court] shall dismiss any claim presented in a second or successive application unless the applicant shows that the claim satisfies AEDPA's requirements." Savoca, 21 F.4th at 230 (citation omitted) (emphasis in original).

As Savoca explains, "without a factual determination as to whether Savoca's § 924(c) conviction was based on the elements clause or the residual clause" the court cannot decide whether the habeas petition relies on a new rule of constitutional law. Savoca, 2022 WL 17256392, at *3. To determine this issue of "historical fact," the district court may look at a wide range of materials. Id. If the record is unclear, the court may consider "background legal conditions" at the time of sentencing. Id. Finally, if, "after conducting this factual inquiry . . . the district court determines that the record is

inconclusive, then it may confront the question whether a habeas motion relies on a new rule of constitutional law when the record does not reveal the basis of the sentence." Id.  In Savoca, because the question had not yet been squarely presented, the Court of Appeals did not decide on the nature of the petitioner's burden, that is, whether a petitioner would have to show only that his sentence "may have been predicated" on the now-void residual clause or whether he must establish that it is "more likely than not" that it was.  Id. at *3 n.1.

Savoca thus lays out a three-step process: first, determine whether as a matter of historical fact the record indicates which § 924(c)(3) clause was the basis of the conviction. Second, if the record is inconclusive, consider the background legal conditions.  Finally, if the background legal conditions do not elucidate the question, a court may reach the question of the petitioner's burden and whether it has met that burden.

The question presented for this successive petition therefore is which clause of § 924(c)(3) was responsible for defining count 4 -- the attempted robbery count -- as a crime of violence.  Under § 924(c)(3), the term "crime of violence" means an offense that is a felony and either (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "force clause")

10

or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause") (emphasis supplied).  The parties agree that if the residual clause was responsible, then a constitutional violation occurred and if the force clause was responsible, then a statutory violation occurred.[2]

The trial and sentencing in this case took place in 2012. At that time, neither counsel nor the Court was focused on the constitutionality of the definition of a crime of violence contained in § 924(c)(3)(B).  And, of course, it is nigh impossible to remember one's thought process over a decade ago. Nonetheless, the charge given to the jury demonstrates that this Court relied, in connection with count 5, on its understanding that the force clause applied to count 5 and built a charge based on that understanding.  The charge relied on its description of the elements of robbery and attempted robbery to charge the jury on the elements of a crime of violence contained in the force clause, to wit, an offense that has as an element the attempted use of physical force.  If the Court had concluded

---

[2] Section 924(c)(3)(A) has been referred to as either the force clause or the elements clause.  This Opinion refers to it as the force clause.

that Barnes' conviction for using a firearm in connection with a crime of violence hinged on the definition in the residual clause, it would have included in its jury instructions the requirement that, in order to convict the defendant on count 5, the jury must find that the Government had proven beyond a reasonable doubt that the attempted Hobbs Act robbery involved a substantial risk that the defendant may use force against the person or property of another.  Such language does not appear in the charge.

Some background may be helpful here.  The firearms count which Barnes faced in count 5 stemmed from a classic attempted Hobbs Act robbery in which actual force, indeed the weapon itself, was used by Barnes to physically attack the victim.  The Government's theory at trial was that the defendant committed the crime charged in count 5 by using his weapon in an attempted robbery.  This was a charge that appeared to fall within the heartland of a crime of violence, as defined by the force clause in § 924(c)(3)(A).  The Government called witnesses who testified that the defendant struck the robbery victim repeatedly in the head and face with the firearm in an effort to obtain drugs and introduced medical records to corroborate the victim's injury.  Therefore, the charge to the jury and thus the defendant's conviction reflect a conviction for a crime of

violence as defined in the force clause in § 924(c)(3)(A).
Nothing in the nature of the proof the Government offered at
trial or relied upon in its summation required the Court or the
parties to consider that the attempted Hobbs Act robbery was
not, in fact, a traditional crime of violence encompassed by the
force clause and that they had to analyze instead whether would
qualify as a crime of violence as defined by the more expansive
residual clause in § 924(c)(3)(B).[3]  Therefore, the charge to the
jury and even the parties' requests to charge reflect that
Barnes' conviction was premised on the classic definition of a
crime of violence contained in the force clause.[4]

---

[3] In United States v. Medina, 32 F.3d 40 (2d Cir. 1990), the
Court of Appeals observed in dicta that an attempted robbery is
a violent felony within the meaning § 924(e)(2)(B)(i), which is
very similar to § 924(c)(3)'s force clause.  Id. at 45.

[4] The defendant's request to charge included in Request 68 the
following:
> Now the first question, as to Count Five, is whether
> the defendant is guilty of the crime of violence,
> which is the attempted robbery of the drug dealer
> charged in Count Four. As before, this element
> essentially turns on the decision you have to make
> anyway regarding Count Four.  Count Five relates to
> the attempted robbery charged in Count Four.  If you
> found the defendant guilty on Count Four, then this
> element of Count Five is satisfied and you may go on
> to consider the second element.  If you find that the
> government has not proved Count Four beyond a
> reasonable doubt, for any reason, then you need not
> consider Count Five at all because a defendant can't

The relevant jury charges are as follows.[5]  The count 3
charge for conspiracy included a definition of the object of
that conspiracy, that is, Hobbs Act robbery.  That definition
includes elements contained within the force clause of §
924(c)(3) by focusing on the use of actual or threatened force,
violence or fear of injury to take the drugs or drug proceeds.
It does not include language required by the residual clause,
that is, that the conviction could be based on conduct posing a
substantial risk that physical force may be used.  The charge
includes the following language:

> The government must prove beyond a reasonable doubt,
> therefore, that it was an objective of the conspiracy
> to take or obtain narcotics or narcotics proceeds from
> the suspected narcotics dealer or in the presence of
> that person; and that the 'taking' or 'obtaining' was
> to be against the victim's will, by means of actual or
> threatened force, violence or fear of injury, whether
> immediately or in the future, to the victim's person
> or property.  It is not necessary that the government
> prove that force, violence and fear would all have
> been used or threatened.  The government satisfied its
> burden of proving an unlawful taking if it proves
> beyond a reasonable doubt that any of these methods
> was to be employed by the conspiracy.  The words
> force, violence, and fear have their common and

---

be guilty of Count Five unless he is guilty of Count
Four.

[5] Each juror was provided with a copy of the jury charge to read
along as the Court read the charge aloud and to take with them
into the jury room for their deliberations.  The written charge
was marked as a Court Exhibit.

ordinary meaning.  A threat may be made verbally or by
a physical gesture.

Trial Transcript at 1746.  (Emphasis supplied.)

The charge for count four (attempted Hobbs Act robbery)
included a definition of attempt.  It instructed the jury that
it did not need to find that the defendant actually committed a
robbery.  Instead, in order to find the defendant guilty of
attempted robbery as charged in count 4, the Government had to
prove beyond a reasonable doubt three elements, including that
"the defendant had the intent in June 2006 to rob a person in
the Bronx whom he believed to be in possession of narcotics or
narcotics proceeds" and that "the defendant engaged in conduct
amounting to a substantial step toward the commission of that
robbery."  Id. at 1748.  (Emphasis supplied.)  A substantial
step was defined as "something more than mere preparation.
Evidence of verbal agreement alone is not enough.  Yet a
substantial step must be less than the last act necessary before
the actual commission of the attempted crime."  Id. at 1749.
Again, this portion of the charge did not include an instruction
that the jury could convict the defendant of attempting to
commit robbery because there was a substantial "risk" that
physical force "may" be used.

15

The jury charge for count 5 (the firearms count) was, in pertinent part, the following:

> Count Five charges the defendant with the crime of using, carrying, or possessing a firearm during and in relation to the attempted robbery charged in Count Four.  In order to find the defendant guilty of this charge, the government must prove each of the following elements of the crime beyond a reasonable doubt:
>
> First, that the defendant is guilty of the charge in Count Four.
>
> Second, that the defendant knowingly used or carried a firearm during and in relation to the attempted robbery charged in Count Four, or knowingly possessed a firearm in furtherance of the attempted robbery charged in that count.

Trial Transcript at 1749.  (Emphasis supplied.)

The final section of the charge that is relevant to these issues is the charge asking for a special verdict on whether the defendant brandished a firearm during the attempted robbery. The verdict sheet instructed the jury to answer the following question only if it had found the defendant guilty on count 5, the firearms count.  The question was: "Has the Government proven beyond a reasonable doubt that a firearm was brandished during the attempted robbery?"  The charge defined the word brandish as meaning "to display all or part of it, or to otherwise make its presence known to another person in order to intimidate or advise that person that violence is imminently and

immediately available, regardless of whether the firearm is directly visible." Id. at 1750.  The jury convicted Barnes of brandishing a firearm in connection with the attempted robbery, confirming that the defendant was convicted of committing attempted robbery through the actual or threatened use of force, and not because the Government had only proved that there was a substantial risk that physical force may be used, that is, for a crime of violence as defined in the residual clause.

Given this determination of historical fact it is unnecessary to explore either the background legal conditions for this conviction or to determine the standard the petitioner must meet to obtain habeas relief.  Whether the petitioner has the burden to show that it is more likely than not that his conviction was premised on the residual clause or that it may have been so predicated, the petitioner has failed to meet that burden.

In his reply memorandum, Barnes acknowledges that his challenge to the conviction on count 5 "implicates" Taylor.  It allows him to establish that attempted Hobbs Act robbery is not a crime of violence under the force clause of § 924(c)(3).  He contends, however, that his petition nonetheless "relies on" Davis because the Davis decision is necessary to the success of his claim.  He reasons that the decision in Davis is necessary

for him to argue that count 5 lacks a valid crime-of-violence predicate.  According to Barnes, until <u>Davis</u> issued, and struck down the residual clause in § 924(c)(3), his claim did not "accrue".  This argument is insufficient to resolve the factual inquiry demanded by <u>Savoca</u>.  2022 WL 17256392, at *2.

Barnes next argues (on the assumption that it is necessary for this Court to determine as a historical matter which clause of § 924(c)(3) -- the force clause or the residual clause -- supported his conviction on count 5) that he need only show that his conviction "may have" based on the residual clause and that he has met that burden.  To carry that burden, Barnes relies on the following evidence from the 2012 trial.

First, he points out that there was no discussion at the sentencing proceeding of whether the attempted Hobbs Act robbery conviction qualified as a crime of violence because everyone assumed that it did.  He points out that the Court of Appeals had ruled in 1996 in <u>U.S. v. Elder</u>, 88 F.3d 127 (2d Cir. 1996), that a conspiracy to commit robbery qualified as a crime of violence under the residual clause.  <u>Id.</u> at 129.  Therefore, Barnes asserts, everyone assumed that an attempt to commit a robbery would also qualify as a crime of violence.  This argument fails to show that the Court, or indeed the parties, had concluded that the count 5 conviction relied on the

18

definition of a crime of violence contained in the residual clause.

A judge must instruct the jury on every element of the offense.  Indeed, a trial court must charge the jury on each element of the crime even when an element is not in dispute. United States v. Natale, 526 F.2d 1160, 1167 (2d Cir. 1975). Barnes was indicted in count 5 with knowingly using or carrying a firearm in relation to a crime of violence, or knowingly possessing a firearm in furtherance of such a crime.  That crime of violence was identified as the attempted robbery charged in count 4.  The charge on count 4 required the jury, essentially, to find those elements of a crime of violence that are listed in the force clause of § 924(c)(3).  It did not include any charge regarding a crime of violence as it is defined in the residual clause.

Second, Barnes argues that the failure of defense counsel to make any objection at the charging conference is irrelevant since the determination of whether an offense is a crime of violence is determined by the categorical approach or at least the modified categorical approach when there is a divisible statute.  As already discussed, Savoca requires a searching inquiry to determine as a matter of historical fact what the record indicates.  21 F.4th at 230.  In any event, this Opinion

has relied on an analysis of the jury charge, which as Barnes acknowledges, is permitted even if the categorical approach should ever be determined to govern this inquiry.

Third, Barnes points to the charge itself as evidence that the conviction may have been based on the residual clause. He does not identify any passage that instructed the jury that it could convict the defendant if it found that there was a substantial "risk" that physical force "may" have been used in the attempted robbery, as would have been necessary if the Court had relied on the residual clause. He does rely, however, on the following passages as suggesting that he could have been convicted without the jury finding that there was the attempted use or threatened use of physical force, as required by the force clause.

Barnes first argues that a "risk" that force "may" be used was suggested by that portion of the charge on the crime of robbery, given in connection with count 3, that the taking or obtaining of the narcotics against the victim's will could be by means of a "fear of injury" to the victim's person or property "in the future". This portion of the charge, however, is entirely consistent with the traditional definition of a crime of violence contained in the force clause of § 924(c)(3)(A), which requires that an element of the offense include the

attempted or threatened use of physical force against the person
or property of another.  The force clause does not require, for
instance, that the threat to use force be restricted to a threat
to use the force immediately.

Next, Barnes argues that the charge on attempt -- that
there be a "substantial step" toward committing the robbery --
did not require that step to be violent.  But the force clause
does not require that force actually be used.  The force clause
includes the "attempted use" and "threatened use" of physical
force.  Under federal law, an attempt requires proof of a
substantial step, as charged here, and the crime of attempt at
issue was to commit Hobbs Act robbery, which requires proof that
the taking was against the victim's will by means of "actual or
threatened force, violence or fear of injury."  Accordingly,
this argument fails as well to show that the count 5 conviction
may have relied on the residual clause.

Finally, Barnes argues that <u>Taylor</u> itself explained that an
intention combined with a substantial step does not require the
Government to prove that a crime of violence occurred as defined
in the force clause of § 924(c)(3).  140 S.Ct. at 2020.  This
argument is inapposite.  It is undisputed here that the count 5
conviction would have to be vacated if challenged on direct
appeal.  The question is whether it must be vacated on a

successive habeas petition because it is constitutionally infirm.  Taylor is a decision based on a statutory construction and will not support a finding that the firearms conviction is constitutionally infirm.

### Conclusion

The petitioner's June 15, 2016 petition for a writ of habeas corpus is denied.  The defendant having made a substantial showing of a denial of a federal right, a certificate of appealability shall be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.3d 23, 24 (2d Cir. 1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this order would be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).


Dated:    New York, New York
          March 26, 2024


                              _____
                              DENISE COTE
                    United States District Judge